## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Nathan Wayne Silbernagel, | Case No. 22-CV-1979 (JRT/JFD) |
| Plaintiff, | |
| v. | **ORDER** |
| Westfield Insurance Company, | |
| Defendant. | |

This matter is before the Court on the Motion of Westfield Insurance Company ("Westfield") to Compel Physical Examination and Motion to Amend the Pretrial Scheduling Order. (Dkt. No. 23.) The case was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. The Court grants Westfield's Motion to Compel a physical examination to the extent that it seeks to compel the examination but denies the motion to the extent it seeks to prevent Plaintiff, Nathan Wayne Silbernagel, from recording the examination. Having a clear record of what occurred in the physical examination benefits both parties, and Westfield has failed to show that Mr. Silbernagel's recording of the examination would impede or impact the examination. The Court grants Westfield's motion to Amend the Pretrial Scheduling Order because the examination remains incomplete, and the original deadline to complete it has passed. (Pretrial Scheduling Order 3, Dkt. No. 15.)

**BACKGROUND**

This motion arises from a dispute between Nathan Wayne Silbernagel and Westfield about whether Mr. Silbernagel's insurance policy with Westfield covers costs attributable to injuries he suffered in a September 2018 automobile accident with an underinsured motorist. (Compl. ¶¶ 12–19, Dkt. No. 1-1.) Mr. Silbernagel claims to have experienced "serious and permanent injuries, including past and future hospital and medical expenses, past and future pain and suffering, past and future lost wages, as well as a loss of enjoyment of life." (*Id.* at ¶ 13.) The insurance carrier for the other driver involved in the accident paid its liability limit to settle Mr. Silbernagel's claims against that company's insured driver. (*Id.* ¶ 15–18.) Because that settlement was not enough to fully compensate Mr. Silbernagel, he sought underinsured motorist benefits from his own insurance carrier, Westfield. (*Id.* ¶¶ 14, 19.)

In this motion, Westfield seeks to compel Mr. Silbernagel to complete a physical examination but not to record the examination. (Def.'s Mot. Compel, Dkt. No. 23.) Mr. Silbernagel has no objection to the physical examination or to Westfield's choice of examiner, but he wants to record the examination. (Pl.'s Mem. Opp'n. 4, Dkt. No. 30; *see also* Decl. of L. Michael Hall III, ¶ 7–13, Dkt. No. 31 (describing counsel's routine practice of recording Rule 35 examinations.)) The Court's Pretrial Scheduling Order, filed October 6, 2022, ordered that the physical examination occur on or before December 26, 2022. (Pretrial Scheduling Order 3.) Nothing in that Order permitted a recording of the physical examination but nothing in that Order prohibited recording either. Westfield noticed the examination on November 21, 2022, and on the same day, Mr. Silbernagel confirmed that

2

he would attend the physical examination and stated that he planned to record the examination. (Decl. of Stuart D. Campbell ¶¶ 6–7, Dkt. No. 26.) In the days preceding the December 1, 2022 Status Conference, the parties did not come to an agreement regarding the issue of whether or in what manner the examination would be recorded. (*Id.* at ¶¶ 6–11.) Westfield filed this motion to compel an unrecorded physical examination and to amend the pretrial scheduling order. On December 16, 2022, this Court held a motions hearing to address Westfield's Motion to Compel. (Hr'g Mins., Dkt. No. 34.) Stuart D. Campbell represented Westfield. (*Id.*) L. Michael Hall, III and Valerie Narcy represented Mr. Silbernagel. (*Id.*)

## LEGAL STANDARDS

In civil cases, parties can discover nonprivileged information "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In a case in which a party's "mental or physical condition—including blood group—is in controversy," the Court may order a physical or mental examination by an independent examiner. Fed. R. Civ. P. 35(a)(1).

### A. Compelling a Physical Examination Under Fed. R. Civ. P. 35

The party seeking discovery has the burden of making a threshold showing of relevance. *Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. Apr. 26, 2021) (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)). Then, "the party resisting production bears the burden of establishing lack of relevancy or undue burden."

3

*Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, No. 15-CV-3183 (ADM/LIB), 2016 WL 6997113, at *7 (D. Minn. Sept. 6, 2016) (quoting *Saint Paul Reinsurance Co. v. Com. Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000)). This is a broad disclosure standard but it is not boundless; parties can discover only that information which is "proportional to the needs of the case," considering "the importance of the issues," "the amount in controversy," "the parties' relative access to relevant information," their resources, how important the discovery is in resolving the issues, and "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The Court may order a physical examination "only on motion for good cause" and with notice to the parties and the examinee. Fed. R. Civ. P. 35(a)(2)(A). The Supreme Court has held that the good cause requirement in Rule 35 "is not a mere formality but is a plainly expressed limitation on the use of that Rule." *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964). To succeed in a motion to compel a party to participate in a Rule 35 physical examination, a movant must "affirmative[ly] show[] . . . that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Id*.

Further, a party who takes part in a Rule 35 physical examination and requests a copy of the resulting report waives any privilege the party has in other medical consultations conducted in relation to the controversy addressed in the matter. Fed. R. Civ. P. 35(b)(4).

4

### B. Permissibility of Plaintiff-Recorded Physical Examination

When courts order a Rule 35 exam, they have the power to dictate the "time, place, manner, conditions, and scope of the examination." Fed. R. Civ. P. 35(a)(2)(B). While a number of federal courts, both in the District of Minnesota and nationally, have used their Rule 35 power to rule on whether a Rule 35 examination may be recorded, no clear rule can be distilled from those cases either prohibiting or permitting the recording of a Rule 35 physical examination. Nor is there even agreement among courts on a single rule of decision for the question.[1] *Ellis v. W. Bend Mut. Ins. Co.*, No. 20-CV-476 (PJS/TNL), 2020 WL 3819410, at *3 (D. Minn. July 8, 2020) (citing *Cardenas v. Prudential Ins. Co. of Am.*, No. 99-CV-1421, 2004 WL 741539, at *1 (D. Minn. Mar. 1, 2004) and *Tomlin v. Holecek*, 150 F.R.D. 628, 631 (D. Minn. 1993.)).

This Court finds that whether recording is appropriate is a fact-specific inquiry, as courts in this District have demonstrated by reached differing conclusions when given different facts. *Compare Eldredge v. City of Saint Paul*, No. 9-CV-2018 (JRT/JSM), 2010 WL 11561278, at *5 (D. Minn. Mar. 4, 2010) (allowing recording after finding it would "neither impede nor impact the examination") *with Ellis*, 2020 WL 3819410, at *4

---

[1] Mr. Silbernagel cites numerous Minnesota state court decisions which have interpreted an analogous rule in the Minnesota Rules of Civil Procedure to allow for recording. Under the *Erie* doctrine, federal courts hearing cases on diversity jurisdiction, as the Court does in this case, "apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427, (1996); *see also Leach v. Greif Bros. Cooperage Corp.*, 2 F.R.D. 444, 446 (S.D. Miss. 1942) ("Rule 35 prevails in the trial of cases in the federal court and supersedes the procedural statute and holding of the state court. . . ."). Mr. Silbernagel's extensive discussion of state court decisions that construe the Minnesota Rules of Civil Procedure is beside the point and has played no part in the Court's decision.

(prohibiting recording when plaintiff "cites no persuasive reason specific to this case in arguing the examination should be recorded") *and Tomlin*, 150 F.R.D. at 631–33 (prohibiting recording where expert objected and finding that recording was "inconsistent with the underlying purposes of a Rule 35 examination.").

Some courts place the burden of proving that a recording is appropriate on the party seeking to record the examination. *See Ellis*, 2020 WL 3819410, at *4 (concluding that the party seeking recording was resisting discovery and therefore bore the burden of explaining why the examination should not continue as noticed); *Ornelas v. S. Tire Mart, LLC*, 292 F.R.D. 388, 397 (S.D. Tex. 2013) (requiring showing of "special circumstances"). Others do not explicitly place the burden of proof on any particular party but consider whether the recording would impede the examination. *See Eldredge,* 2010 WL 11561278, at *5; *Gavenda v. Orleans Cnty.*, 174 F.R.D. 272, 274 (W.D.N.Y. 1996); *see also Tomlin*, 150 F.R.D. at 631 (considering whether recording was consistent with "the underlying purposes of a Rule 35 examination"). The Court finds the latter standard persuasive because it pragmatically emphasizes achieving the underlying purposes of a Rule 35 examination, rather than choosing a party to categorize as "resisting" discovery.

In *Ellis*, the court drew on the general rule that once a party seeking discovery has shown relevance, the "party resisting discovery bears the burden to show that the discovery sought is unduly burdensome or otherwise oppressive." *Ellis*, 2020 WL 3819410 at *3 (citing *Saint Paul Reinsurance Co.*, 198 F.R.D. at 511). As here, the defendant in *Ellis* noticed the examination, and the plaintiff "refused to attend unless the examination was recorded." *Id.* at *1. The defendant moved to compel an examination without any

6

recording. *Id.* The court found that the plaintiff was resisting discovery because he would not comply with the examination as it was noticed. *Id.* at *4. The *Ellis* court does not explain if the notice for the examination specifically prohibited recording of any kind. In this case, the notice did not. (Hall Decl., Ex. 45.) The notice simply identified the examiner, the examinee, the date of the examination, the location of the examination, and a warning that failure to attend the examination would subject the examinee to fees. (*Id.*)

The Court will not find that Mr. Silbernagel is resisting discovery on these facts or, for that matter, that Westfield is. There is a genuine disagreement among the parties as to whether Mr. Silbernagel can record the examination without Westfield's permission. It is a disagreement that is, in essence, about the conditions of the Rule 35 exam. The power to set the conditions of the Rule 35 examination lies with the Court. Fed. R. Civ. P. 35(a)(2)(B). The Court will follow *Eldredge* and allow the recording unless doing so would adversely affect the examination. 2010 WL 11561278 at *5.

### C. Amending Pretrial Scheduling Orders

A pretrial schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) (citing *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)). The "exacting" good cause standard demands a demonstration that the existing schedule "cannot reasonably be met despite the diligence of the party seeking the

extension." *Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minn.*, No. 97-CV-2185 (JRT/RLE), 187 F.R.D. 578, 581–82 (D. Minn. June 7, 1999) (quotation omitted).

## ANALYSIS

There are two motions before the Court. Westfield seeks to compel Mr. Silbernagel to attend and participate in an unrecorded physical examination. As a result of the additional time needed to address its first motion, Westfield also seeks to amend the Pretrial Scheduling Order because the original deadline for the completion of the physical examination has passed. (Def.'s Mem. Supp. 3; Pretrial Scheduling Order 3.)

**A. Westfield's Motion to Compel an Unrecorded Physical Examination**

Westfield's motion to compel Mr. Silbernagel's physical examination raises two independent questions: whether Mr. Silbernagel is required to participate in his physical examination, and whether he may record that physical examination, should it be required. The Court answers both questions in the affirmative.

**i. Mr. Silbernagel Must Participate in a Rule 35 Physical Examination.**

"The court . . . may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). In this case, the Court allowed one physical examination in the Pretrial Scheduling Order filed on October 6, 2022, and the parties agree that Mr. Silbernagel's physical condition is at issue in this matter, creating good cause for a Rule 35 examination. (Def.'s Mem. Supp. 9; Pl.'s Mem. Opp'n. 4.) Further, Mr. Silbernagel has no objection to the physical examination or the examiner chosen by

Westfield. (Pl.'s Mem. Opp'n. 4.) As such, Westfield's motion to compel Mr. Silbernagel's physical examination is granted.

### ii. Mr. Silbernagel May Record His Rule 35 Physical Examination.

The real dispute on this motion is whether Mr. Silbernagel can record his Rule 35 examination. Mr. Silbernagel seeks to record the examination in an effort "to preserve a true and accurate record of the information exchanged." (Pl.'s Mem. Opp'n 1.) Westfield argues that this request is untimely, unreasonable, unjustified, and would provide Mr. Silbernagel with a strategic advantage at trial. (Def.'s Mem. Supp. 13, 15.) The parties have framed their dispute as one between maximizing the information available to the parties and the finder of fact (Plaintiff) versus evenly matching the opponents in an adversarial process (Defendant). As explained below, the Court finds these purposes are not opposed and that recording in this case advances them both.

The purpose of the discovery rules in the Federal Rules of Civil Procedure is to allow "the parties to obtain the fullest possible knowledge of the issues and facts before trial." 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2001 (3d ed. 1998). The discovery rules "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958).

The Rule 35 physical examination is different from other tools in a litigator's toolbox for two primary reasons. First, the physical examination involves an examination of a person, usually a party, by an independent, licensed professional. Second, the physical examination results in a report created by the independent examiner that the party ordering

9

the examination may then use as evidence against the examinee. The Defendant chose the examiner in this case, and that examiner has served in a similar capacity in the past. (Hall Decl. at ¶ 6.) These factors make the Rule 35 examination inherently adversarial. *Davanzo v. Carnival Cruise Lines*, 2014 WL 1385729, at *2 (S.D. Fla. Apr. 9, 2014) ("From a common sense perspective, Davanzo's compulsory examination is more akin to a litigant attending a deposition than a medical patient seeing his doctor.").

The Rule 35 examination also "level[s] the playing field," by allowing a moving party to adequately "appraise the Plaintiff's physical state." *Stewart v. Burlington N. R.R.*, 162 F.R.D. 349, 351 (D. Minn. 1995) (citing *Tomlin*, 150 F.R.D. at 632) (D. Minn. 1993)). The purpose of the Rule 35 examination is to serve as an "evaluatory tool." *Tomlin*, 150 F.R.D. at 632. As long as the evaluatory utility of the examination is not impacted by a recording of its contents, there is nothing in the rule that prohibits such a recording. In the absence of a Rule 35 examination, courts would be forced to rely solely on the testimony of a plaintiff's own doctors, who may be biased toward the interests of their patients and also are bound by professional obligations of confidentiality. The Rule 35 examination levels the playing field by providing courts with the perspective of a medical professional who is distanced from a patient-provider relationship. That professional distance is a perspective that, in the standard physical examination, is unaffected by the presence of a recording device. In fact, a recording of the examination will be of value to both parties by

providing each with a complete, verifiably true account of what occurred in the examination room.

Although this Court follows *Tomlin*'s rationale in not placing the burden of proof on a particular party, this Court, by allowing recording, reaches the opposite result from *Tomlin*. That is because the proposed examination in *Tomlin* was psychological while the proposed examination in this case is physical. The *Tomlin* court believed that recording would interfere with the psychological examination, a belief seconded by the *Tomlin* examiner herself, whereas here, the sensitivity that accompanies a psychological examination is simply not present because Mr. Silbernagel claims damages resulting from physical injuries. *Tomlin*, 150 F.R.D. at 632–33 (D. Minn. 1993). Unlike the examiner in *Tomlin*, who opposed recording, in the instant case the examiner has a history of allowing her examinations to be recorded. (Decl. Michael Hall III, ¶ 66.) Westfield has not presented any argument that a recording would in any way disrupt or impede the examination, except for mentioning that "having a court reporter present during the examination would certainly be more disruptive than a tape recorder." (Def.'s Mem. Supp. 15–16 n. 4.)

Westfield argues that Silbernagel's recording of the examination will place it at a strategic disadvantage because Mr. Silbernagel will have a detailed record of the examination which Westfield ordered, while Westfield will not have access to the medical opinions of other professionals with whom Mr. Silbernagel has consulted regarding his accident-related injuries. (Def.'s Mem. Supp. 13.) This argument is unpersuasive in two important ways. First, there is a difference between the services performed by an individual's personal physician and those performed by a physician hired to perform a Rule

11

35 physical examination. Patients in a typical doctor-patient relationship select their doctors, while examinees in a Rule 35 physical examination do not. *Davanzo*, at *2. Further, patients typically share much more information with their personal physicians than do examinees with examiners. *Id.* Patients in traditional doctor-patient relationships enjoy a degree of confidentiality, while examinees expect the results of the examination to be shared with their adversaries. *Id*. These differences are sufficient to reject Westfield's attempt to equate having a record of Mr. Silbernagel's consultations with his physicians and having a record of a Rule 35 physical examination.

Second, Westfield still has the opportunity to obtain information from Mr. Silbernagel's personal physicians, either through traditional discovery methods or through the special mechanism provided in Rule 35 for examinees who request the report from the examination. Fed. R. Civ. P. 35(b)(4) ("By requesting and obtaining the examiner's report, . . . the party examined waives any privilege it may have . . . concerning testimony about all examinations of the same condition."). If Mr. Silbernagel requests the examination report, Westfield will be permitted to seek testimony from his treating physicians, ensuring that it will have access to the information it claims to lack. If Mr. Silbernagel does not request the report, Westfield will have exclusive access to the physical examination report in addition to the recording of the examination, which will be provided by Mr. Silbernagel in compliance with this Order.

The *Ellis* court and Westfield discuss the avenues available to a plaintiff who disagrees with an independent examiner's conclusions resulting from a Rule 35 exam. They include: "challeng[ing] the examiner's credibility during a deposition or cross

12

examination[,] . . . prob[ing] into the bias of the examiner by using any myriad of questions, . . . [and] mov[ing] to exclude the examiner's testimony." *Ellis*, at *4. The Court agrees that these procedural avenues exist and can be used to challenge an examiner's report. However, the Court disagrees with the conclusion that their existence should preclude a recording of the examination. Rather, these procedural tools make a recording of the examination more valuable, both to the parties and to the finder of fact, by providing evidence of the conversation between the examiner and Mr. Silbernagel, the only people present for the examination. Just as Mr. Silbernagel will be able to use the recording to challenge any disagreements he may have with the examiner, so too will Westfield be able to use the recording to verify points of difference regarding the examination. Without a recording, the finder of fact would be forced to decide disputed factual questions about what occurred during the examination solely by assessing the credibility of the examiner and Mr. Silbernagel.

Westfield argues that the appropriate means by which Mr. Silbernagel can challenge the testimony of the examiner is by calling his own expert. (Def.'s Mem. Supp. 13.) It is true that testimony from a competing expert can impeach the credibility of the examiner, but if a dispute arises about what occurred in the Rule 35 examination between Mr. Silbernagel and the examiner, the testimony of a competing expert will be of little help. Recording the Rule 35 examination is a simple and cost-effective solution to avoid (or resolve) any potential disputes about the Rule 35 exam. *See* Fed. R. Civ. P. 1.

Westfield's concerns about Mr. Silbernagel recording his Rule 35 examination misunderstand the fundamental differences between a court-ordered physical examination

13

and the services provided by a personal doctor. (Def.'s Mem. Supp. Mot. Compel 13.) At the same time, Mr. Silbernagel's concern that the examiner chosen by Westfield could make decisions based on conscious or unconscious bias in favor of Westfield is not trivial, but it is a concern that is easily addressed by the use of a recording. (Pl.'s Mem. Opp'n Mot. Compel 7.) As such, the Court sees no reason to forbid Mr. Silbernagel from recording the examination, provided that he alone pays the costs of the recording and that he makes the recording available to Westfield immediately upon receipt.

The Court notes that this dispute has inevitably delayed the progress of this case, and that the delay was avoidable. Both Mr. Silbernagel and Westfield had multiple opportunities to address the question of a recorded examination before and after the originally established deadline for the examination. Mr. Silbernagel could have raised his desire to record the examination at or before the pretrial conference, and Westfield could have allowed a recorded examination to occur and then filed a motion in limine to exclude the recording from evidence.

**B. Westfield's Motion to Amend the Pretrial Scheduling Order**

A pretrial schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Again, "[t]he primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Sherman*, 532 F.3d at 716 (citing *Rahn*, 464 F.3d at 822). Westfield seeks to amend the pretrial scheduling order in this case to provide an additional 60 days after the filing of this Order for the parties to complete the Rule 35 physical examination. As it stands, the deadline for conducting the Rule 35 physical examination has come and gone in the time it has taken to hear the motion

and prepare this Order. Counsel were unable to complete the examination in the time allotted because they disagreed on a point of unsettled procedural law in this District. Counsel timely brought the dispute to the Court's attention, and they shall not be penalized for their diligence in doing so. Because a dispute about an unsettled issue of law prevented the timely completion of the examination, the Motion is granted.

## CONCLUSION

Rule 35 does not address the issue of whether a party who is subject to a physical examination under Fed. R. Civ. P. 35(a)(1) may make an audio recording of the examination. The Court finds that a recording would be useful to both parties and for the record in this case, and it shall not prevent Mr. Silbernagel from making a recording of the Rule 35 examination.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Westfield's Motion to Compel (Dkt. No. 23) a physical examination is **GRANTED** in part and **DENIED** in part. Mr. Silbernagel shall participate in a physical examination at a date to be set by the parties. The examination will be recorded at Mr. Silbernagel's cost. Mr. Silbernagel will disclose the recording to Westfield immediately upon receipt. The parties shall confer on or before March 7, 2023 to establish the time and location of the examination and the method by which the examination will be recorded.

2. Westfield's Motion to Amend the Pretrial Scheduling Order is **GRANTED**. The deadline to complete the physical examination is extended to May 1, 2023.

Date: February 28, 2023                    *s/ John F. Docherty*
                                            JOHN F. DOCHERTY
                                            United States Magistrate Judge